Vickie L. EDWARDS, et al., Plaintiffs,

v.

CITY OF SANTA BARBARA, et al., Defendants.

No. CV 94–2243 RG (JRx).

United States District Court, C.D. California.

March 14, 1995.

Andrew W. Zepeda, Beverly Hills, CA, Jay Alan Sekulow, Washington, DC, Benjamin W. Bull, Nikolas T. Nikas, Phoenix, AZ, for plaintiffs.

Daniel J. Wallace, City Atty., Janet K. McGinnis, Asst. City Atty., Santa Barbara, CA, for defendants.

## ORDER

GADBOIS, District Judge.

This matter came before the Court on Plaintiffs' renewed motion for a preliminary injunction and Defendants' motion for summary judgment. Plaintiffs' motion is **GRANTED** and Defendants' is **DENIED**.

## I. BACKGROUND

In May of 1993, the City Council of defendant City of Santa Barbara ("the City") adopted an ordinance limiting protest activity outside medical clinics and places of worship ("the Ordinance"). The Ordinance was passed in the wake of complaints by individuals and organizations about the conduct of anti-abortion protestors. For instance, a representative of a local Planned Parenthood clinic complained that protestors were disrupting traffic, impeding access to the clinic, and confronting patients and staff members in a harassing fashion. *See, e.g.,* Exhibits 103, 104 to Defendants' Opposition to Preliminary Injunction (letters to City Council members from Executive Director of Planned Parenthood of Santa Barbara, detailing incidents and complaints and requesting legislative response). There were also complaints that protestors had confronted abortion providers at their churches.

### A. The Ordinance

The Ordinance has two main provisions.[1] Section 9.99.030 ("the Driveway Provision") prohibits all "demonstration activity" on or within eight feet of the driveway of a health care facility or place of worship.[2] "Demonstration activity" is defined to include "all expressive or symbolic content, whether active or passive...." Ordinance at 9.99.010(D). Section 9.99.020 ("the Bubble Zone Provision")[3] forbids a person from "impeding" or "hampering" access to a health care facility or place of worship by failing to withdraw to eight feet away from a person when the person so requests. This provision is effective in the "access area", which is the area within 100 feet of a health facility or place of worship. Ordinance at

9.99.010(A). Obviously, both provisions encompass activity on public sidewalks.

### B. The Instant Suit

This action was brought by two anti-abortion "sidewalk counselors" who challenge the constitutionality of the Ordinance. Plaintiffs Vickie Edwards ("Edwards") and Kathleen Rose McCaulley ("McCaulley") claim that they seek, *inter alia,* to "engage in peaceful hand-to-hand leafletting, one-on-one counseling about abortion alternatives, and periodically hold signs with a pro-life, anti-abortion message." McCaulley Declaration at ¶ 4; Edwards Declaration at ¶ 4. Edwards and McCaulley want to conduct these activities outside of medical facilities providing abortion services within the City.

Both Edwards and McCaulley claim that the Ordinance chills and deters them from this planned expressive activity. Specifically, they claim that they are afraid to engage in any communicative activities within eight feet of a clinic driveway. Edwards Declaration at ¶¶ 12–13; McCaulley Declaration at ¶¶ 12–13. Edwards complains that the Bubble Zone Provision prevents her from conducting effective one-on-one counseling or leafletting, as the eight-foot zone makes it impossible to hand leaflets to people and forces her to speak at a volume that "prevents empathy and sometimes even causes stress." Second Edwards Declaration at ¶ 9–11. Edwards has been arrested for violation of the Driveway Provision, though the charges were dismissed. Fourth Edwards Declaration at ¶¶ 4–10.[4]

Plaintiffs brought the instant suit for injunctive relief against the City and members of the City Council, arguing that the Driveway and Bubble Zone Provisions violate the

---

**1.** The full text of the Ordinance is set forth in the Appendix to this Order.

**2.** The second clause of Section 9.99.030 prohibits impeding access to a clinic or place of worship: "No person shall impede access to a driveway entrance of a health care facility or place of worship by any conduct which delays or impedes the flow of pedestrian or vehicular traffic in or out of such facility." Plaintiffs do not challenge this provision.

**3.** Some of the cases on this subject use the term "bubble zone" very broadly to encompass all

limited-speech areas. This Court uses it only to describe one specific provision of the Ordinance.

**4.** Based on these facts, there is no question that plaintiffs have standing to make a facial, pre-enforcement challenge to the Ordinance. *See Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 393, 108 S.Ct. 636, 643, 98 L.Ed.2d 782 (1988); *Ripplinger v. Collins,* 868 F.2d 1043, 1046 (9th Cir.1989). Defendants do not argue otherwise.

First Amendment to the United States Constitution. This Court denied a motion for a preliminary injunction against the Driveway Provision in an order dated May 24, 1994.[5]

Plaintiffs now move for a preliminary injunction against both provisions, presenting evidence of legislative history for the first time. Defendants move for summary judgment, arguing that the undisputed facts show that the Ordinance is constitutional.

## II. THE LEGAL STANDARDS

### A. The Standard for Summary Judgment

■ Under F.R.C.P. 56, summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. F.R.C.P. 56(c). A party resisting summary judgment has the affirmative obligation to bring forward evidence "on which the jury could reasonably find for [the nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). A mere scintilla of evidence will not suffice. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. The Standard for a Preliminary Injunction

■ The Ninth Circuit's traditional test for determining whether to issue a preliminary injunction requires the moving party to demonstrate the following:

1. The moving party will suffer irreparable injury if the injunctive relief is not granted;

2. The moving party has a substantial likelihood of succeeding on the merits;

3. An injunction will not harm the nonmoving party more than it helps the moving party; and

4. Granting injunctive relief is in the public interest.

*City of Tenakee Springs v. Block*, 778 F.2d 1402, 1407 (9th Cir.1985); *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 674–75 (9th Cir.1984).

More recently, the Ninth Circuit has articulated an alternative test. Under this test, the moving party must demonstrate either:

1. Probable success on the merits and the possibility of irreparable harm; or

2. The lawsuit raises serious questions and the balance of hardships tips sharply in the movant's favor.

*Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir.1991).

Therefore, for the purpose of plaintiffs' motion, this Court must evaluate whether plaintiffs have shown probable success on the merits and the possibility of irreparable harm.

## III. AN OVERVIEW OF FIRST AMENDMENT ANALYSIS

■ This case presents a facial challenge to a time, place, and manner restriction of speech in a public forum. Therefore, the Court's First Amendment analysis will proceed in discrete and predictable stages. *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753–54, 105 L.Ed.2d 661 (1989).

First, the Court must determine if the Ordinance is content neutral. If the Ordinance is not content neutral, it is presumptively invalid, and will only survive if the City can show that it is necessary to serve a compelling state interest, and narrowly tailored to meet that end. *Simon & Schuster v. Crime Victims Bd.*, 502 U.S. 105, 114–18, 112 S.Ct. 501, 507–09, 116 L.Ed.2d 476, 486–488 (1991). If the Ordinance is content neutral, then it will stand if it is narrowly tailored to serve a significant government interest. *Ward*, 491 U.S. at 791, 109 S.Ct. at 2753–54, 105 L.Ed.2d at 675.

**VACATED.**

---

5. To the extent that this Court's previous ruling is inconsistent with this opinion, it is hereby

■ A restriction of First Amendment activity is narrowly tailored if it "targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). This Court's determination of whether the Ordinance is narrowly tailored entails a constitutional overbreadth analysis of both the Bubble Zone and the Driveway provisions.

■ "Only a statute that is substantially overbroad may be invalidated on its face." *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Here, this Court must first determine whether the enactment of the Ordinance reaches a substantial amount of constitutionally protected conduct, *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362. Special scrutiny is called for in the case of a criminal ordinance such as this one. *Winters v. New York*, 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840 (1948).

## IV. CONTENT NEUTRALITY

The first step in the First Amendment analysis of the Ordinance is the question of content neutrality. If the Ordinance is not content-neutral, the City must pass the nearly insurmountable barrier of presumptive invalidity. *See Simon & Schuster*, 502 U.S. at 114–17, 112 S.Ct. at 507–09, 116 L.Ed.2d at 486–487. If it is content-neutral, then it will pass must if it is "narrowly tailored to serve

a significant government interest." *See Ward*, 491 U.S. at 791, 109 S.Ct. at 2753, 105 L.Ed.2d at 675; *Clark v. Community for Creative Nonviolence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984).

Plaintiffs' arguments about content-neutrality may be separated into four discrete areas: the face of the statute; the legislative intent; neutrality of enforcement; and reference to the reaction of the audience.

### A. The Face of the Statute

■ As this Court found in its previous Order, the Ordinance is facially neutral. It does not single out any viewpoint or subject, but applies equally to all expressive activity within the proscribed areas.[6]

### B. The Legislative Intent

■ A facially neutral statute is still presumptively invalid if it is designed to suppress a particular viewpoint. "The government may not regulate [expression] based on hostility—or favoritism—towards the underlying message expressed." *R.A.V. v. St. Paul*, 505 U.S. ——, ——, 112 S.Ct. 2538, 2545, 120 L.Ed.2d 305, 320 (1992). However, it is important to distinguish an attempt to suppress a viewpoint from an attempt to deal with the *effects* of particular conduct or speech:

> The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in

6. Plaintiffs point to *Sabelko v. City of Phoenix*, 846 F.Supp. 810 (D.Ariz.1994), in which an Arizona district court found that a similar statute was content-biased on its face. The *Sabelko* Court based its decision on the fact that the statute before it focused on "protest." That statute read:

> Demonstration activity includes but is not limited to protesting, picketing, distributing literature, attempting to impede access, or engaging in oral protest, education, or counseling activities.

*Id.* at 814. According to the *Sabelko* Court, the emphasis on "protest" meant that the statute turned on the content of the speech or the viewpoint expressed:

> If the speaker "protests," the speech is prohibited by the Ordinance. On the other hand, if the speaker "supports," the speech may or may not be violative of the Ordinance. Thus,

the Ordinance imposes criminal liability depending on the content and viewpoint of speech.

*Id.* at 819.

However, this case is distinguishable from *Sabelko*. In the Ordinance before this Court, "demonstration activity" is defined as:

> All expressive and symbolic conduct, whether active or passive, which shall include, but not be limited to, protesting, picketing, distributing literature, and engaging in oral or silent protest, education or counseling activities.

Ordinance at 9.99.010(D) (emphasis added). Clearly, this extraordinarily broad language does not exclude "support" while targeting "protest," but applies to all conceivable expression. The phrase "all expressive and symbolic conduct" renders the Ordinance facially neutral at the expense of gross overbreadth, as discussed below.

particular, is whether the government has adopted a regulation of the speech *because of disagreement with the message it conveys.* The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, *even if it has an incidental effect on some speakers or messages but not others.* Government regulation of expressive activity is content-neutral *so long as it is justified without reference to the content of the regulated speech.*

*Ward,* 491 U.S. at 791, 109 S.Ct. at 2754, 105 L.Ed.2d at 675 (cites omitted, emphasis added). *See also Renton v. Playtime Theatres,* 475 U.S. 41, 47–49, 106 S.Ct. 925, 928–30, 89 L.Ed.2d 29 (1986).

Plaintiffs assert that the legislative history of the Ordinance demonstrates that its drafters were motivated by hostility to the anti-abortion viewpoint. In support of this theory, Plaintiffs have submitted extensive legislative history, including letters to City Council members, newspaper articles, and a transcript of the City Council meeting at which the Ordinance was adopted.

█ However, as *Ward* makes clear, it is not enough to show that the anti-abortion protests inspired the City Council to act, or that the Ordinance has a disproportionate effect on people with anti-abortion views. Plaintiffs must show that drafters acted out of hostility towards the anti-abortion viewpoint, or in an effort to suppress it. *Ward,* 491 U.S. at 791, 109 S.Ct. at 2753–54, 105 L.Ed.2d at 675.[7]

Plaintiffs fall short of this showing. The legislative history demonstrates that the City Council was motivated by concern that anti-abortion protests were preventing free access to medical clinics and churches. The fact that Planned Parenthood requested the Ordinance because of anti-abortion protests demonstrates nothing more than concern with the *effects* of protest conduct. The flood of letters concerned with access to abortion clinics on the one hand, and the free speech rights of anti-abortion protestors on the oth-

er, centered on this issue. Similarly, the extensive citizen statements at the City Council hearing demonstrate concerns about the *effects* of anti-abortion protests and the rights of the protestors. None of this serves as evidence that the Council acted out of animus towards the anti-abortion viewpoint.

Plaintiffs emphasize the comments of City Council member Harold Fairly, who opined that the Ordinance "is content motivated, and that's been made very clear by the nature of today's discussion." Hearing Transcript at 54. However, Mr. Fairly is not an arbiter of content neutrality. The rest of his comments reveal that he shares plaintiffs' incorrect conception of content neutrality: he thinks that the Ordinance is content-biased because it was motivated by the effects of anti-abortion protests. He also thinks that the Ordinance would become content-neutral if it dealt with protests at schools as well. Hearing Transcript at 56. Finally, in later comments, he acknowledges:

> For my own case ... I would not let my vote be interpreted as either being for abortion or against abortion. I am voting on this issue on the basis ... that it is an access issue.

Transcript at 60. Mr. Fairly's comments do not demonstrate that the City Council acted out of hostility towards a particular viewpoint.

Plaintiffs compare this legislative process with that in *Church of Lukumi v. Hialeah,* 508 U.S. ——, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), in which the Supreme Court struck down a local ordinance because of the viewpoint bias reflected in the legislative history. However, the facts of *Hialeah* are distinguishable from this case. The Hialeah City Council acted not only out of concern for the effects of animal sacrifice, but out of a distinct and pervasive hostility towards the beliefs of the Santeria religion. For instance, the president of the Hialeah City Council asked "What can we do to prevent the Church from opening?" 508 U.S. at ——, 113 S.Ct. at 2231, 124 L.Ed.2d at 496.

---

7. Plaintiffs cite *Sabelko* for the opposite proposition. However, as discussed above, the *Sabelko* Court based its finding of content bias on the fact that the ordinance before it banned only "protest" expression outside clinics, unlike the Ordinance here. *Sabelko,* 846 F.Supp. at 819.

The Resolution adopted by the Hialeah City Council included the statement, "This community will not ·tolerate religious practices which are abhorrent to its citizens. . . ." *Id.* The Supreme Court found that the "pattern we have recited discloses *animosity to Santeria adherents and their religious practices* . . . ." *Id.* (emphasis added). By contrast, plaintiffs have not demonstrated that the drafters of the Ordinance here bore any hostility towards the anti-abortion viewpoint.

Plaintiffs suggest that they have proved viewpoint animus by showing that certain members of the Santa Barbara City Council were affiliated with pro-choice groups. The Ordinance was requested by the Executive Director of Planned Parenthood of Santa Barbara, who wrote a letter to City Council members Harriet Miller and Eleanor Langer. *See* Plaintiffs' Exhibits Nos. 918–959. Langer was a member of the Board of Directors of Planned Parenthood when the Ordinance was enacted. Plaintiff's Exhibit Nos. 1242. Council member Miller "has attended Planned Parenthood meetings." Mayor Sheila Lodge, who is on the Council, is also a member of Planned Parenthood and serves as a volunteer "escort." Rollings Deposition at P51, L18. Plaintiffs conclude that these affiliations prove viewpoint discrimination. Plaintiffs' Opposition to Summary Judgment at 23. They have proved no such thing. Even though such membership permits an inference that these individuals may disagree with the anti-abortion viewpoint, plaintiffs have utterly failed to connect that disagreement to the enactment of this Ordinance. As discussed above, plaintiffs' evidence shows only that the Council members wanted to protect free access to clinics and churches.

Plaintiffs have not shown that the Ordinance was motivated by disagreement with the anti-abortion viewpoint; in fact, their evidence shows that it was justified by reference to effects, not content. Therefore, their argument about legislative intent must fail. *Ward,* 491 U.S. at 791, 109 S.Ct. at 2753–54, 105 L.Ed.2d at 675.

### C. *Neutrality of Enforcement*

■ Plaintiffs assert that the history of enforcement of the Ordinance demonstrates its viewpoint bias, and argue that a law is not content-neutral when its enforcement turns on scrutiny of the content of expression. *See, e.g., Simon & Schuster,* 502 U.S. at 115–16, 112 S.Ct. at 508, 116 L.Ed.2d at 487 (1991); *Arkansas Writer's Project v. Ragland,* 481 U.S. 221, 230, 107 S.Ct. 1722, 1728, 95 L.Ed.2d 209 (1987); *Hialeah,* 508 U.S. at —— – ——, 113 S.Ct. at 2226–27, 124 L.Ed.2d at 489–490 (1993).

Plaintiffs marshall two arguments in support of this point. First, they show that the vast majority of those cited under the Ordinance (97 out of 101, as of the time of the motion) were anti-abortion protestors. Second, they cite the deposition of a police officer for the proposition that enforcement is based on the content of expression. *See* Deposition of Michael Foxen.

The evidence of arrests is inadequate to show biased enforcement. Plaintiffs merely demonstrate that many anti-abortion demonstrators have been cited under the Ordinance. They present no evidence that protestors with different messages have violated the Ordinance without being arrested. In other words, there is no evidence to rebut the inference that anti-abortion protestors are most often arrested because they are the ones most often in violation of the Ordinance.

Plaintiffs' second argument is more troubling. As they point out, Officer Foxen testified that application of the Ordinance depends on whether someone is expressing some type of an opinion in the prohibited zones. Foxen Deposition at 56. He gives many damning examples; for instance, he says that someone playing a country-western song in the zone would not be in violation, but someone singing an anti-abortion song would be. *Id.* at 51. Moreover, despite defendants' arguments to the contrary, it appears that Officer Foxen has put his views into practice. *See, e.g.,* Foxen Deposition at 29 (person arrested for "expressing his opinion within the zone"); *Id.* at 25 (person arrested because "his being in the zone with the Bible constituted his attempting to express his opinion within a demonstration-free zone."); *Id.* at 41 (arrest because subject

"was, by his presence, ... attempting to express his opinion").

However, based on this Court's conclusion that the Ordinance is overbroad, it need not resolve the difficult question of whether this pattern of enforcement renders the Ordinance content-based.[8]

### D. Dependence on Listener's Reactions

Plaintiffs also assert that the Ordinance is not content-neutral because it makes the legality of speech dependent on the reaction of the audience. It is well established that a "[l]istener's reactions to speech is not a content neutral basis for regulation." *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, ——, 112 S.Ct. 2395, 2403, 120 L.Ed.2d 101, 114 (1992); *Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989); *Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988).

Plaintiffs' argument on this point must be divided into two themes. First, they suggest that the entire Ordinance is content-biased because it is motivated out of concern for the psychological effects of protest on persons seeking access to the clinics or churches. Second, they argue that the "Bubble zone" provision is content biased because it makes the right to speak within the 8–foot zone dependent on the listener's willingness to tolerate the speech.

#### 1. Concern with Psychological Effects

It is true that the Ordinance is partially motivated by the "adverse psychological and emotional effects of such harassing or intimidating activities directed at them from extremely close proximity." *See* Appendix A. However, this is not the sort of government motivation that runs afoul "listener's reaction" rule as articulated by the Supreme Court. In *Forsyth County*, the Court struck down an ordinance that set a variable for parade permits. The fee was calculated depending on the probable cost of police protection for the parade; thus, the vehemence of the opposition to the parade's message determined the cost of the expression. *Forsyth*

*County*, 505 U.S. at ——, 112 S.Ct. at ——, 120 L.Ed.2d at 115. Similarly, the import of the Court's ruling in *Johnson* was that the strength of opposition to flag burning did not justify banning it. *Johnson*, 491 U.S. at 408–409, 109 S.Ct. at 2542, 105 L.Ed.2d 342. In other words, this line of cases does not involve statutes protecting listeners from emotional harm; rather, it dealt with statutes limiting speech because of its tendency to inflame listeners.

By contrast, the Supreme Court has upheld statutes whose rationales include mitigation of harmful emotional and psychological impact. Notably, in *Madsen v. Women's Health Center*, 512 U.S. ——, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994), the Supreme Court approved Florida's argument that it had a legitimate governmental interest in restricting protests around medical clinics because "targeted picketing of a hospital or clinic threatens not only the psychological, but the physical well-being of the patient held 'captive' by medical circumstance." 512 U.S. at ——, 114 S.Ct. at 2526, 129 L.Ed.2d at 609. The Supreme Court based this logic on its prior holding in *Frisby*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), in which the Court found a significant government interest in protecting the tranquility of the home because of the interest of protecting the privacy of a "captive audience." 487 U.S. at 484–485, 108 S.Ct. at 2502–03, 101 L.Ed.2d 420. This precedent establishes that the Ordinance's concern with emotional impact on listeners does not signify content bias.

Based on these conclusions about content neutrality, this Court must next determine whether the Ordinance is narrowly tailored to serve a significant government interest. *Ward*, 491 U.S. at 791, 109 S.Ct. at 2753–54, 105 L.Ed.2d 661.

#### 2. The Bubble Zone Provision

Plaintiffs also argue that the Bubble Zone Provision runs afoul of the *Forsyth County* rule on listener reaction because it makes their right to speak dependent on the listen-

---

**8.** The Court notes that Officer Foxen's testimony provides many practical examples of overbroad application of the Ordinance.

er's willingness to hear. This was the rationale of the *Sabelko* Court, which found that a nearly identical "bubble zone" was content biased because it depended on listener reaction. 846 F.Supp at 819.

Faced with a similar "bubble zone" injunction that prohibited protestors from approaching patients without consent, the Supreme Court stuck down the injunction as overbroad and declined to engage in content neutrality analysis. *Madsen*, 512 U.S. at —— n. 6, 114 S.Ct. at 2529 n. 6, 129 L.Ed.2d at 613 n. 6. This Court elects to take the same approach. Because this Court finds that the Bubble Zone Provision is overbroad, it need not resolve the difficult issue of its content neutrality.

### V. NARROWLY TAILORED

"The First Amendment requires that a regulation on free speech be narrow and precise." *City of Houston v. Hill*, 482 U.S. 451, 464–7, 107 S.Ct. 2502, 2511–12, 96 L.Ed.2d 398 (1987). A law is narrowly tailored "if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby*, 487 U.S. at 485, 108 S.Ct. at ——, 101 L.Ed.2d 420, *quoting Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808–810, 104 S.Ct. 2118, 2130–31, 80 L.Ed.2d 772 (1984). Plaintiffs contend that the Driveway and Bubble Zone Provisions are not narrowly tailored to serve a significant governmental interest because they are facially overbroad. In effect, Plaintiffs contend that both provisions impermissibly sweep in protected activity beyond that required to serve the legitimate governmental purpose underlying the ordinance, the protection of access to medical clinics and places of worship.

#### A. Overbreadth

■ Under First Amendment overbreadth analysis, an individual may challenge a statute on its face because it threatens others not before the court "who desire to

engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503, 105 S.Ct. 2794, 2802, 86 L.Ed.2d 394 (1985).

In engaging in an overbreadth analysis, this Court must tread lightly. "Only a statute that is substantially overbroad may be invalidated on its face." *Hill*, 482 U.S. at 458, 107 S.Ct. at 2508, 96 L.Ed.2d 398 (1987), *citing Ferber*, 458 U.S. at 769, 102 S.Ct. at 3361, 73 L.Ed.2d 1113. "The requirement that the overbreadth be substantial arose from our recognition that application of the overbreadth doctrine is, 'manifestly, strong medicine,' and that 'there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.'" *Taxpayers for Vincent*, 466 U.S. at 801, 104 S.Ct. at 2126, 80 L.Ed.2d 772, *citing Broadrick*, 413 U.S. at 613, 93 S.Ct. at 2916–17, 37 L.Ed.2d 830.

#### 1. The Driveway Provision [9]

■ Plaintiffs argue that the Driveway Provision is overbroad because it completely bans all expressive activity on a public sidewalk, including such traditionally favored activities as passive leafletting and handbilling. *See, e.g., Madsen*, 512 U.S. at —— ——, 114 S.Ct. at 2526–27, 129 L.Ed.2d at 610. Defendants, in turn, contend that the Driveway Provision is narrowly tailored because it is limited to a zone encompassing the driveway and the eight-foot region immediately adjacent thereto, an area different in kind from other areas surrounding the medical facility. In resolving this issue, this Court must determine whether the Ordinance burdens more speech than is necessary in order to serve the identified governmental interest of ensuring free ingress to and egress from the clinic. *Ward*, 491 U.S. at 791, 109 S.Ct. at 2753–54, 105 L.Ed.2d 661.

---

9. The provision reads: "No person shall conduct any demonstration activity within the driveway area or within eight (8) feet of the driveway area of a health care facility or place of worship ... No person shall impede access to a driveway entrance of a health care facility or place of worship by any conduct which delays or impedes the flow of pedestrian or vehicular traffic in or out of such facility."

"In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates,* 455 U.S. at 494, 102 S.Ct. at 1191, 71 L.Ed.2d 362; *Kolender v. Lawson,* 461 U.S. 352, 359, n. 8, 103 S.Ct. 1855, 1859, n. 8, 75 L.Ed.2d 903 (1983). In this case, it is apparent from the face of the Driveway Provision that all expressive activity, whether peaceful or harassing, vocal or silent, is prohibited within the eight-foot zone on either side of the driveway leading to the clinic.[10] Defendants have thus banned all forms of expressive activity, even silent prayer or expressive t-shirts, from the driveway areas of every medical facility and place of worship in Santa Barbara.

■ It is axiomatic in American constitutional jurisprudence that the state cannot prohibit all protected forms of expressive activity in a public forum. *See, e.g., Airport Comm'rs v. Jews for Jesus, Inc.,* 482 U.S. 569, 575, 107 S.Ct. 2568, 2572–73, 96 L.Ed.2d 500 (1987) ("We think it obvious that such a ban cannot be justified even if LAX were a nonpublic forum because no conceivable governmental interest would justify such an absolute prohibition of speech"); *Madsen,* 512 U.S. at ——–——, 114 S.Ct. at 2526–27, 129 L.Ed.2d at 610 (noting distinction between focused picketing, which may be banned, and "generally disseminated communication that cannot be completely banned in public places, such as handbilling and solicitation"); *Frisby,* 487 U.S. at 486, 108 S.Ct. at 2503, 101 L.Ed.2d 420 ("The type of focused picketing prohibited by [the state court injunction] is fundamentally different from more generally directed means of communication that may not be completely banned in [public places]"); *Perry Educational Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983) (in traditional public forum, "the government may not prohibit all communicative activity"); *Gerritsen v. City of Los Angeles,* 994 F.2d 570, 577 (9th Cir.1993) (invalidating ordinance which prohibited handbilling within certain limited areas of public park).

The Driveway Provision effectively creates a First Amendment "free zone" in which no one may engage in expressive activity of any kind. *See Jews for Jesus,* 482 U.S. 569, 574, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500. Such a blanket ban necessarily prohibits more expressive conduct than is necessary to achieve the purpose of the Ordinance. Like the resolution at issue in *Jews for Jesus,* the Driveway Provision "prohibits even talking and reading, or the wearing of campaign buttons or symbolic clothing" within eight feet of every driveway leading up to every medical facility and place of worship in Santa Barbara. *Id.* It also prevents traditionally favored activities such as leafletting and handbilling. *See Ward,* 491 U.S. at 799, n. 7, 109 S.Ct. at 2578, n. 7 ("[A] ban on handbilling, of course, would suppress a great quantity of speech that does not cause evils that it seeks to eliminate"); *accord Sabelko,* 846 F.Supp. at 820 ("The overbreadth of the Ordinance is most evident insofar as it restricts passive leafletting and handbilling even though the Supreme Court has warned against time, place and manner restrictions on such conduct in the public forum").

Although the driveways leading to medical clinics are arguably distinguishable from other public fora, *see Gerritsen,* 994 F.2d at 576, the conduct prohibited must still be narrowly defined vis-a-vis the governmental interest the restriction purports to serve. The disputed language in this case is far broader than the language used in ordinances and injunctions challenged elsewhere, insofar as it encompasses the entire universe of expressive activity.[11] This Court notes that the

---

**10.** The ordinance explicitly defines "demonstration activity" as "all expressive and symbolic conduct, whether active or passive, which shall include but not be limited to, protesting, picketing, distributing literature, and engaging in oral or silent protest, education or counseling activities." *See* 9.99.010(D). The Driveway Provision apparently excepts expressive conduct engaged in by individuals attempting to traverse the driveway.

**11.** Even the ordinance struck down in *Sabelko,* 846 F.Supp. 810, which generally tracks the Santa Barbara ordinance, contains the more restrictive definition of demonstration activity, as including but not limited to "protesting, picketing, distributing literature, attempting to impede ac-

Driveway Provision carves out an exception for individuals merely attempting to traverse the driveway area; presumably an individual traversing the driveway while incidentally engaging in expressive activity would not violate the face of the Ordinance.[12] Despite this narrow proviso, however, the Driveway Provision still criminalizes expressive activity *qua* expressive activity, without relating such expression to its effect on impeding access to the clinic.[13] Such a sweeping ban on protected First Amendment activity cannot withstand constitutional scrutiny. It is simply not narrowly tailored to achieve its averred purpose, the protection of ingress to and egress from clinics and churches.[14]

Defendants urge this Court that any overbreadth problem in the language of the Driveway Provision is cured by the narrow construction of the Ordinance. It is axiomatic, however, that Santa Barbara cannot avoid the overbreadth problem by narrowing the problematic provision through selective enforcement:

> It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.

*Hill,* 482 U.S. at 466, 107 S.Ct. at 2512, 96 L.Ed.2d 398, *citing United States v. Reese,* 92 U.S. 214, 221, 23 L.Ed. 563 (1876). According the policy "unconstitutional discretion in enforcement" does not save an overbroad ordinance. *Id.* Criminal statutes such as the one at issue here must be scrutinized with particular care, *see, e.g., Winters, supra,* 333 U.S. at 515, 68 S.Ct. at 670, 92 L.Ed. at 849; those that make unlawful a substantial amount of constitutionally protected conduct may be held invalid even if they also have legitimate application. *E.g., Kolender,* 461 U.S. at 359, n. 8, 103 S.Ct. at 1859, n. 8, 75 L.Ed.2d 903.

In this case, the Driveway Provision fails to pass muster under the First Amendment because it incorporates the constitutional infirmity of the Ordinance's overbroad definition of demonstration activity and thereby criminalizes the entire universe of expressive activity. Such overbreadth cannot be saved by selective enforcement, no matter how well intentioned. This Court must thus conclude that the Driveway Provision sweeps too broadly.

This Court does not envy city councils across the country the difficult and thankless job of crafting an ordinance that strikes a constitutional balance between ensuring women free access to clinics, often at a diffi-

cess, or engaging in oral protest, education, or counseling activities." *Id.* at 814.

12. Specifically, the Driveway Provision states: "... provided however that it shall be lawful for a person to use a public sidewalk or street right-of-way adjacent to a health care facility or place of worship in order to traverse a driveway area." 9.99.030.

13. One need look no further than the record before this Court to find an example of the overbreadth of the Driveway Provision. At least one anti-abortion demonstrator has been cited under the Ordinance for stepping into the eight-foot driveway zone to give literature to someone. *See* Plaintiffs' Supplemental Offer in Support of Their Motion for Preliminary Injunction, 5:7–9.

14. This Court notes that other driveway buffer zones with a more narrowly defined realm of prohibited activity have been upheld. *See, e.g., Madsen,* 512 U.S. at ——— ———, 114 S.Ct. at 2527–28, 129 L.Ed.2d at 611 (upholding absolute ban on "congregating, picketing, patrolling, demonstrating or entering" any property within thir-

ty-six feet of the clinic's property line). In so holding, the *Madsen* court noted: "We also bear in mind the fact that the state court originally issued a much narrower injunction, providing no buffer zone, and that this order did not succeed in protecting access to the clinic." *Id. See also Pro–Choice Network v. Schenck,* 1994 WL 480642, *9 (2d Cir. September 6, 1994) (finding unconstitutionally overbroad an injunction creating a 15–foot buffer zone permitting two demonstrators at a time to enter and engage in sidewalk counselling but noting that, "a different record revealing greater intransigence by Project Rescue might well support a more restrictive injunction ..."); *Portland Fem. Women's H. Ctr. v. Advocates for Life,* 859 F.2d 681, 686 (9th Cir.1988) (upholding injunction establishing a 25–foot buffer zone against "demonstrating or distributing literature" on the sidewalk in front of the clinic).

This Court notes as well that the final sentence in § 9.99.030, not challenged here, appears to serve the governmental interest of securing safe and unimpeded access to clinics and churches without triggering the same overbreadth problems.

cult and personal moment in their lives, and protecting the First Amendment rights of individuals who disagree with the choice these women are making. Nor is this Court heedless of the increasing violence against clinics here in California and throughout the country. However, legislatures may not seek to redress these societal problems by enacting measures as distinctly overbroad as the one before this Court.

For the foregoing reasons, Defendants' motion for summary judgment as to the Driveway Provision is **DENIED,** and Plaintiffs' motion for a preliminary injunction against enforcement of the Driveway Provision is **GRANTED.**

*2. The Bubble Zone Provision*

■ Plaintiffs contend that the Bubble Zone Provision is overbroad because its mandatory withdrawal provision is impermissibly based upon the emotive impact of lawful First Amendment activity on the audience.[15] Defendants, in turn, argue that the Bubble Zone is simply a form of "legislated politeness" which allows harried passersby to traverse areas of protest.

As an initial matter, this Court notes that violation of the Bubble Zone Provision entails hindering or impeding access to medical facilities and places of worship while engaging in demonstration activity. To the extent that the definition of "demonstration activity" is

overbroad, the Bubble Zone Provision suffers from the same constitutional infirmity as the Driveway Provision, *supra.* However, the overbroad definition of demonstration activity, in isolation, fails to invalidate the Bubble Zone Provision because the demonstration activity is only incidental to the conduct regulated by the provision.[16] The Bubble Zone Provision must stand or fall on the constitutionality of the specific prohibition of "impeding" or "hindering" ingress to and egress from the clinic.

■ The explicit language of the Bubble Zone Provision defines the prohibited conduct as follows:

> No person, in the course of demonstration activity ..., shall impede or hamper the free access to or departure from any health care facility or place of worship *by failing to withdraw immediately* to a distance of at least eight (8) feet away from any person who has requested such withdrawal.

9.99.020(A) *(emphasis added).* The provision further states that "impede" or "hamper" means "to obstruct, hinder or delay." *Id.* It is undisputed that a narrowly drafted prohibition on obstructing access to clinics is constitutional.[17] The provision challenged here, however, defines "obstruct, hinder or delay" with the appositive phrase "by failing to withdraw immediately."[18] The specific

15. That such impact was of concern to the drafters is readily apparent from the face of the Ordinance. *See, e.g.,* Preamble, Ord. 4812 at 1 (noting the "averse physiological and emotional effects of ... harassing or intimidating activities directed ... from extremely close proximity.")

16. This Court does note, however, that the literal language of the Ordinance appears to prohibit impeding access to clinics when committed in the course of demonstration activity, but not when such impeding is not incidental to an expressive purpose. To the extent that this result is intended, and not merely indicative of inartful drafting, it impermissibly singles out expressive activity. *See United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968).

17. Indeed, Plaintiffs in this case do not challenge the final sentence in 9.99.030, which states in relevant part:
"No person shall impede access to a driveway entrance of a health care facility or place of

worship by any conduct which delays or impedes the flow of pedestrian or vehicular traffic in or out of such facility."

18. This Court notes that there are two possible constructions of the prepositional phrase "by failing to withdraw ..." The first view is that the prepositional phrase syntactically renames the prohibited conduct "impede or hamper." Under this interpretation, failing to withdraw necessarily impedes access and hence violates the Ordinance. This is the view adopted by both parties and hence this Court. *See, e.g.,* City's Memorandum of Points and Authorities in Support of Summary Judgment Motion, 20:24–21:2 ("[I]f the demonstrator does not immediately withdraw upon an articulated withdrawal request, he or she is impeding and hampering access and violating the ordinance"); Council Agenda Report, with finished action, of April 20, 1993, 840 (discussing optimal personal space of eight feet in order to "reduce the impact of perceived hostile and angry behaviors directed at a person"); Ordinance Committee Council Agen-

category of conduct the provision is designed to address is therefore the failure to withdraw upon request. The relevant inquiry for this Court is thus whether the creation of a bubble zone around visitors to the clinic and its immediate environs is a constitutional prohibition on expressive conduct.

The case law and the literal language of the Bubble Zone Provision indicate that it is. This Court notes at the outset that bubble zones more or less comparable to the one at issue here have not fared well recently. In *Madsen*, the Supreme Court struck down an injunction creating a 300–foot bubble zone around a clinic and a requirement that demonstrators refrain from physically approaching anyone unless and until such person indicates a desire to communicate. In so holding, the Court stated:

> [I]t is difficult, indeed, to justify a prohibition on *all* uninvited approaches of persons seeking the services of the clinic, regardless of how peaceful the contact may be, without burdening more speech than necessary to prevent intimidation and to ensure access to the clinic.

*Madsen*, 512 U.S. at ——, 114 S.Ct. at 2529, 129 L.Ed.2d at 613 (*emphasis in original*). In so holding, the *Madsen* court specifically stated that the prohibited speech must be independently proscribable (*e.g.*, fighting words or threats) and that the consent requirement alone is sufficient to invalidate the provision. *Id.*

Defendants attempt to distinguish the bubble zone in *Madsen*, which prohibited all approaches within a 300–foot radius of the clinic unless the listener first consents, from the Bubble Zone before this Court, which prohibits such activity only after the listener expresses his or her non-consent. It is clear that the "cease and desist" Bubble Zone challenged here is less restrictive than the "no approach" zone invalidated by *Madsen*. However, this distinction does not alone render the Bubble Zone narrowly tailored:

> [B]oth the cease and desist provision here and the no approach provision in Madsen operate to allow the prospective counselee to control the prospective counselor's opportunity to engage in protected expression. The provisions are thus equally restrictive of the communication offered by the counselors; both effectively condition the demonstrator's right to engage in protected expression on another person's wish to hear such expression.

*Pro–Choice Network*, 1994 WL 480642, *11 (striking down an injunction creating a fifteen-foot cease-and-desist bubble zone). *See also Sabelko*, 846 F.Supp. at 823 (striking down a permanent criminal injunction creating an eight-foot bubble zone as overbroad because it bans all expressive activity, including handbilling and leafletting, and vests enforcement power in private citizens); *Fargo Women's Health v. Lambs of Christ*, 488 N.W.2d 401 (N.D.1992) (striking down preliminary injunction that completely banned distributing literature to those unwilling to receive it).

The cease and desist provision challenged here, like the broader blanket provision invalidated in *Madsen*, sweeps too broadly.[19] The violation of both provisions is defined in the terms of subjective listener reaction, an impermissibly overbroad basis for limiting expressive conduct that is itself not indepen-

da Report, April 30, 1993 ("A person's free speech is limited only within the 100 foot access area and *then only if requested by another individual within the eight foot bubble ...*") (*emphasis added*).

The second view interprets the prepositional phrase "by failing to withdraw" as constituting a subset of impeding behavior singled out for prohibition. Under this view, failing to withdraw does not *per se* violate the provision. That is, the descriptions of the prohibited behavior are cumulative: The demonstrator must first actively impede access to the clinic, and the demonstra-

tor must then fail to withdraw. This interpretation would pose difficult legal questions. *See* fn. 14, *supra*. However, since it is apparent to this Court that both parties construe the phrase as appositional, rather than conjunctive, this Court need not resolve the conceptual difficulties posed by the second possible interpretation.

**19.** Indeed, this Court notes that an anti-abortion protestor would violate the literal language of the Ordinance simply by handing literature to a willing recipient accompanied by and in close physical proximity to a clinic escort who requests that the protestor withdraw.

dently proscribable.[20] Accordingly, the Bubble Zone Provision is unconstitutionally overbroad; it is not readily subject to a narrowing construction by this Court, and its deterrent effect on expression is both real and substantial. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975).

 This Court realizes that the patients and visitors at medical facilities may be particularly vulnerable to solicitation and demonstration activities because entering a medical facility for any kind of treatment is inherently stressful. *See, e.g., International Society for Krishna Consciousness v. Lee*, 505 U.S. ——, ——, 112 S.Ct. 2701, 2708, 120 L.Ed.2d 541, 553 (1992) ("face-to-face solicitation presents risks of duress that are an appropriate target of regulation. The skillful, and unprincipled, solicitor can target the most vulnerable, including those accompanying children or those suffering physical impairment and who cannot easily avoid the solicitation.") Indeed, the language of the Preamble to the Ordinance indicates a belief that individuals entering and exiting medical facilities and places of worship are a captive audience to demonstration activity.

Although this argument is intuitively appealing, *see, e.g., Pro–Choice Network*, 1994 WL 480642, *16 (Oakes, J., dissenting) ("Women who want abortions have no choice but to brave the demonstrations en route to clinics. They are, in effect, a captive audience to the messages of the protestors"), this Court notes that Defendants cite no authority for applying the captive audience doctrine to individuals on public sidewalks en route to medical treatment. Indeed, the captive audience doctrine has traditionally been limited to situations where an individual is at home. *See Frisby*, 487 U.S. at 487, 108 S.Ct. at 2504. The captive audience doctrine has been applied only sparingly in public fora. *See, e.g., Lehman v. Shaker Heights*, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (applying the captive audience doctrine to passengers on rapid transit buses).

Moreover, the overbreadth problems plaguing the substance of the Driveway and the Bubble Zone Provisions render this case less amenable to a captive audience analysis. *See Sabelko*, 846 F.Supp. at 825, *citing City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547 (7th Cir.1986), *aff'd without opinion* 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987).

Accordingly, after careful and difficult consideration, this Court finds the Bubble Zone Provision unconstitutionally overbroad. It is never easy to strike a balance between countervailing constitutional rights. The demonstrations outside of the Santa Barbara clinics no doubt inflict pain and stress on those who enter the clinic, whether for abortions or for other treatments. That such offense is part and parcel of the importance of First Amendment rights under the Constitution, *see, e.g., Boos*, 485 U.S. at 322, 108 S.Ct. at 1164, 99 L.Ed.2d 333, is small comfort to those confronted with viewpoints they find objectionable at a time when they are most vulnerable to offense. It is equally clear to this Court, however, that those who passionately disagree with a woman's choice to engage in her constitutionally protected right to abortion must be permitted the freedom to express their disagreement in a nonthreatening manner.

For the foregoing reasons, this Court **GRANTS** Plaintiffs' Motion for a Preliminary Injunction, and **DENIES** Defendants' Motion for Summary Judgment.

## VI. VAGUENESS

Plaintiffs also make a vagueness challenge to the Ordinance. They argue that the Bubble Zone Provision is unconstitutionally vague because it makes the right to speak dependent on listener reaction. They also argue that the "demonstration activity" definition is impermissibly vague. However, this Court's conclusion that the Ordinance is overbroad makes it unnecessary to resolve these difficult questions.

**20.** As noted *supra*, this Court need not reach the question of whether the subjective nature of audience response to the demonstrators' message in this case also renders the Bubble Zone Provision content-based. *See Madsen*, 512 U.S. at ——, n. 6, 114 S.Ct. at 2529, n. 6, 129 L.Ed.2d at 613, n. 6.

## VII. APPLICATION TO THE MOTIONS

As set forth above, both the Driveway Provision and the Bubble Zone Provision are unconstitutional. Therefore, defendants' motion for summary judgment is **DENIED;** defendants are not entitled to judgment as a matter of law.

██ Plaintiffs have demonstrated that they will prevail on the constitutional merits. They have also demonstrated that the Ordinance deprives them of First Amendment freedoms, and thus irreparably injures them. *See, e.g., Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976) (even brief deprivations of First Amendment freedoms constitute irreparable injury). Therefore, plaintiffs are entitled to a preliminary injunction. *Gilder,* 936 F.2d at 422. The motion for a preliminary injunction is **GRANTED,** and the City is hereby enjoined from enforcing the Driveway Provision or Bubble Zone provision of the Ordinance.[21]

### VIII. CONCLUSION

Based on the foregoing, Plaintiff's motion for a preliminary injunction against enforcement of the Driveway and Bubble Zone Provisions is **GRANTED.** As two of the provisions of the Ordinance are unconstitutional, defendants' motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

### APPENDIX

An Ordinance of the Council of the City of Santa Barbara Amending the Municipal Code By Adding a New Chapter 9.99 Pertaining to Access to Health Care Facilities

WHEREAS, provision of an access to health care services and to places of worship are critically and uniquely important to the public health, safety, and welfare so that persons desiring to provide or needing access to such services should not be hampered, impeded, harassed or intimidated from providing or obtaining those services;

WHEREAS, persons attempting to access or depart from health care facilities and places of worship have been particularly subject to harassing or intimidating activity tending to hamper or impede their access to or departure from those facilities by persons approaching within extremely close proximity and shouting or waving objects at them;

WHEREAS, such activity near health care facilities and places of worship creates a "captive audience" situation because persons providing or seeking health care services or religious services cannot avoid the area outside of health care facilities or places of worship if they are to provide or receive the health care services or participate in the religious services and the physical and emotional ailments or conditions of patients can make them especially vulnerable to the adverse psychological and emotional effects of such harassing or intimidating activities directed at them from extremely close proximity;

WHEREAS, the adverse physiological and emotional effects created by such harassing or intimidating activities may pose health risks, interfere with medical treatment, diagnosis or recovery or cause persons to delay or forgo medical treatment;

WHEREAS, such harassing or intimidating activities that tend to hamper, hinder or impede provision of or access to health care services or to places of worship undermine a person's right to seek preservation of personal health and legitimate medical treatment, and interfere with a person's freedom of religion;

WHEREAS, this "captive audience" situation requires the enactment of reasonable time, place, and manner restrictions to separate and protect persons expressing their views and persons wishing to access health care facilities and places of worship without direct confrontation, hindrance, harassment or intimidation;

WHEREAS, this ordinance is a necessary time, place and manner restriction intended to reconcile and protect the First

---

**21.** Pursuant to F.R.C.P. 65(c), Plaintiffs shall post a $5,000 bond as security for this preliminary injunction.

Amendment rights of persons near health care facilities and places of worship and the rights of persons seeking to use health care facilities or places of worship to be free from direct confrontation, hindrance, harassment, intimidation and harm;

WHEREAS, this ordinance does not preclude protesting, picketing, demonstrating, or counselling activities near a health care facility or place of worship, but is intended to preclude only those activities involving harassment, intimidation or intrusion which have the effect of foreclosing, hampering, or impeding access to health care services or places of worship and persons seeking to enter or leave health care facilities or places of worship; and

WHEREAS, existing law does not adequately protect such access to health care facilities or places of worship.

Now, therefore, the City Council of the City of Santa Barbara does ordain as follows:

SECTION I. Title 9 of the Santa Barbara Municipal Code is amended by adding Chapter 9.99 which reads as follows:

**9.99.010 Definitions**

As used in this Chapter, the following terms and phrases shall have the indicated meetings:

**A. ACCESS AREA.** Any portion of a public street or other public place or any place open to the public within one hundred (100) feet of the premises of a health care facility or place of worship.

**B. HEALTH CARE FACILITY.** Any medical or health facility, hospital or clinic within the City which is licensed under State law or any building, office or other place within the City regularly used by any health care provider licensed under State law to provide medical, nursing, or health care or advice to patients. A health care facility includes but is not limited to any buildings, appurtenances and grounds, entrances, parking facilities, and driveways.

**C. PLACE OF WORSHIP.** A place of worship includes but is not limited to any buildings, appurtenances and grounds, entrances, parking facilities, and driveways where persons gather to worship when the same are used solely and exclusively for religious worship.

**D. DEMONSTRATION ACTIVITY.** All expressive and symbolic conduct, whether active or passive, which shall include, but not be limited to, protesting, picketing, distributing literature, and engaging in oral or silent protest, education or counseling activities.

**E. DRIVEWAY AREA.** That portion of a street right-of-way (including a sidewalk) generally improved for the purposes of providing a vehicular access to adjacent private property. At the request of a health care facility or place of worship, the City of Santa Barbara will indicate (such as through the use of painted lines) the perimeter boundaries of a driveway area.

**9.99.020 Impeding Access Prohibited**

**A. DEMONSTRATION ACTIVITY— OBLIGATION TO WITHDRAW.** No person, in the course of demonstration activity within the access area of a health care facility or place of worship, acting alone or in concert with others, shall impede or hamper the free access to or departure from any health care facility or place of worship by failing to withdraw immediately to a distance of at least eight (8) feet away from any person who has requested such withdrawal. "Impede" or "Hamper" means to obstruct, hinder or delay.

**B. WITHDRAWAL.** For the purposes of this Section, withdrawal may be requested by a person verbally, or by carrying or wearing a visible sign clearly indicating such withdrawal request. Statements by a person, or signs carried or worn by a person displaying words or symbols such as or similar in effect to "stop," "stop it," "withdraw," "back off," "get away," or "leave me alone" shall be sufficient to constitute a violation of this Section. Mere statements of opinion or disagreement made in the absence of a request to withdraw shall not be construed to be a request under this Section.

**C. DISTANCE.** Distance under this Section shall be measured from that part of the closest demonstrator's body that is nearest to the closest part of the requesting person's body. For purposes of the preced-

ing sentence, the term "body" shall include any natural or artificial extension thereof, including, but not limited to, and outstretched arm or handheld sign.

**9.99.030 Access to Driveway Areas**

No person shall conduct any demonstration activity within the driveway area or within eight (8) feet of the driveway area of a health care facility or place of worship, provided however that it shall be lawful for a person to use a public sidewalk or street right-of-way adjacent to a health care facility or place of worship in order to traverse a driveway area. No person shall impede access to a driveway entrance of a health care facility or place of worship by any conduct which delays or impedes the flow of pedestrian or vehicular traffic in or out of such facility.