Leila Jeanne HILL, Audrey Himmelmann, and Everitt W. Simpson, Jr., Plaintiffs–Appellants,

v.

CITY OF LAKEWOOD, Colorado; Gale A. Norton, in her official capacity as Attorney General of the State of Colorado; and the State of Colorado, Roy Romer, Governor, Defendants–Appellees.

No. 94CA0856.

Colorado Court of Appeals, Div. V.

July 13, 1995.

Rehearing Denied Aug. 17, 1995.

Certiorari Denied Feb. 26, 1996.

The American Center for Law & Justice, Jay Alan Sekulow, James Matthew Henderson, Sr., Washington, DC; Roger W. Westlund, Thornton, for plaintiffs-appellants.

Gorsuch Kirgis L.L.C., Roger W. Noonan, Maureen Herr Juran, Denver, for defendant-appellee City of Lakewood, Colorado.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Carol D. Angel, Sr. Asst. Atty. Gen., Kathie A. Greenwalt Troudt, Asst. Atty. Gen., Denver, for defendants-appellees Gale A. Norton and State of Colo., Roy Romer, Governor.

Fairfield and Woods, P.C., Howard Holme, Denver; Legal Action for Reproductive Action, Celeste Lacy Davis, Roger K. Evans, New York City, for amicus curiae Planned Parenthood of the Rocky Mountains.

Joseph N. de Raismes, III, City Atty., Boulder, for amicus curiae City of Boulder.

Opinion by Judge RULAND.

The principal issue in this appeal is whether § 18–9–122(3), C.R.S. (1994 Cum.Supp.) violates the right of free speech contained in the First Amendment to the United States Constitution. Plaintiffs, Leila Jeanne Hill, Audrey Himmelmann, and Everitt W. Simpson, Jr., appeal from a summary judgment determining that the statute does not violate the First Amendment. We affirm.

Section 18–9–122, C.R.S. (1994 Cum. Supp.), enacted in 1993, provides:

(1) The general assembly recognizes that access to health care facilities for the purpose of obtaining medical counseling and treatment is imperative for the citizens of this state; that the exercise of a person's right to protest or counsel against certain medical procedures must be balanced against another person's right to obtain medical counseling and treatment in an unobstructed manner; and that preventing the willful obstruction of a person's access to medical counseling and treatment at a health care facility is a matter of statewide concern. The general assembly therefore declares that it is appropriate to enact legislation that prohibits a person from knowingly obstructing another person's entry to or exit from a health care facility.

. . . .

(3) No person shall knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way or sidewalk area within a radius of one hundred feet from any entrance door to a health care facility. Any person who violates this subsection (3) commits a class 3 misdemeanor.

Prior to this statute's adoption, hearings were conducted before the House and Senate Judiciary Committees of the General Assembly. In one of the hearings before the House Committee, testimony was presented concerning the conduct of some antiabortion protesters at various medical clinics directed both at patients and staff. See Tape Recording of Testimony before House Judiciary Committee concerning H.B. 1209 (February 12 & 16, 1993, 59th General Assembly). This conduct included efforts to block access to the clinics and to intimidate and harass patients and staff in various ways. The committees were also informed, however, that out of 60,000 patients who obtained services at one of the clinics, only seven percent were there to consider abortions. Nevertheless, all patients were subjected to the same treatment by the protesters. See Tape Recording of Testimony before Senate Judiciary Committee concerning H.B. 1209 (March 3, 1993, 59th General Assembly).

The committees also heard testimony that other types of protests such as those made by animal rights activists occur at medical clinics in the United States where the transplant of animal organs is performed or assessed. The witness also indicated that protesters create a particularly difficult situation for persons with physical disabilities who lack the physical capability to move through crowds. See Tape Recording of Testimony before House Judiciary Committee concerning H.B. 1209 (February 12 & 16, 1993, 59th General Assembly).

Following passage of the statute, plaintiffs filed this action seeking a declaratory judgment that § 18–9–122(3), C.R.S. (1994 Cum. Supp.) violates the First Amendment on its face and that a permanent injunction should enter against enforcement of the statute by defendants, David J. Thomas (as District Attorney), the City of Lakewood, Gale A. Nor-

ton (as Attorney General), and the State of Colorado.

In their complaint and affidavits filed relative to the summary judgment, plaintiffs state that they are "sidewalk counselors" who offer abortion-bound women alternatives to that medical procedure. Plaintiffs state that they educate, counsel, persuade, or inform pedestrians and occupants of motor vehicles in areas adjacent to medical clinics about abortion and abortion alternatives.

To assist in this effort, plaintiffs prepare and distribute written material including cards, leaflets, and pamphlets. Plaintiff Hill uses a fetal model in her counseling and displays it to the public. Posters are also used.

Plaintiffs claim that it is impossible at times both to remain on the sidewalk and stay at least eight feet away from others in order to continue speaking, displaying signs, or otherwise protesting or counseling.

## I

■ Section 18–9–122(3) incorporates the so-called "bubble" concept designed to allow communication between protesters and others but to separate the protesters by an eight-foot distance. The statute applies to public sidewalks and streets which are areas protected by the First Amendment. *See Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988); *Denver Publishing Co. v. City of Aurora*, 896 P.2d 306 (Colo.1995).

Plaintiffs contend that the statute is unconstitutional for a number of reasons. First, they argue that the statute is an improper "content based" regulation which is directed only at them and applies to all forms of written and oral communication. Second, they assert that the statute is overbroad because it infringes upon their right of free speech more than necessary to accomplish the goal of providing access to health care facilities. We are not persuaded by either argument.

■ Initially, we address whether a presumption of constitutionality applies to § 18–9–122(3). As our supreme court held in *Denver Publishing Co. v. City of Aurora, supra*,

if the statute is deemed to be a "content-neutral" statute, plaintiffs must introduce competent evidence that the regulation in fact burdens the exercise of free speech. The burden then shifts to defendants to demonstrate that the statute withstands application of the appropriate constitutional standard of review.

If, on the other hand, the statute is intended to apply only to plaintiffs because of their beliefs and viewpoint regarding abortion, then *Denver Publishing Co. v. Aurora, supra*, suggests that there may be a presumption against its constitutionality. *Cf. People ex rel. Tooley v. Seven Thirty–Five East Colfax, Inc.*, 697 P.2d 348 (Colo.1985).

■ The next issue then is whether the statute is content-neutral, that is, whether the statute is directed only to anti-abortion protesters and their viewpoint.

In *Madsen v. Women's Health Center, Inc.*, 512 U.S. ——, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994), the United States Supreme Court addressed the provisions of a mandatory injunction issued by a Florida state court against protesters at medical clinics in this context. We view the analysis of the Court as instructive here.

Like the injunction entered in *Madsen*, § 18–9–122(3) does not address only the speech of anti-abortion protesters. The statute would impose the same restrictions upon protesters demonstrating in favor of abortion. The law would also apply to protest activity directed at patients requiring or seeking advice relative to an organ transplant. Accordingly, applying the analysis of *Madsen*, we conclude that § 18–9–122(3) is content-neutral because the specific viewpoint of any person who protests at a health care facility is not relevant to a determination whether a violation of the statute has occurred. *See American Life League, Inc. v. Reno*, 47 F.3d 642 (4th Cir.1995) (upholding constitutionality of the Federal Freedom of Access to Clinics Entrances Act).

■ Given our determination that the statute is content-neutral, *Madsen* indicates that the constitutionality of § 18–9–122(3) must be analyzed under the criteria stated in

*Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *see also Denver Publishing Co. v. City of Aurora, supra.* The Court in *Ward* confirmed its holding in prior cases that, even on public streets and sidewalks, the government may impose reasonable restrictions on the time, place, or manner of speech. However, those restrictions must be "narrowly tailored," that is, the restrictions must limit free speech only to the extent reasonably necessary to serve a significant governmental interest. Otherwise, the statute is deemed "overbroad." Finally, it must appear that there are "ample alternative channels" for communication of the information.

■ We hold that § 18–9–122(3) meets the enumerated constitutional requirements.

First, the statute advances a significant governmental interest, namely, to ensure the safety and unobstructed access for patients and staff entering and departing from health care facilities.

Second, the statute does not burden speech more than is reasonably necessary because plaintiffs may continue to communicate with the patients and staff at a distance of eight feet or more. Indeed, the restriction merely is directed at depriving protesters of the opportunity to intimidate or make other physical contact with the patients or staff.

Finally, in addition to oral communication, posters and signs may be made visible at eight feet with the result that reasonable alternatives to face-to-face communication and direct pamphlet handouts are available.

Accordingly, we conclude that the trial court did not err in concluding that defendants satisfied their burden to demonstrate that the statute satisfied the applicable constitutional requirements. Further, to the extent that *Edwards v. City of Santa Barbara,* 883 F.Supp. 1379 (S.D.Cal. No. 94–2243 RG (Jrx), March 14, 1995) is inconsistent with the result we reach here, we decline to follow that case.

## II

■ Plaintiffs next contend that § 18–9–122(3) is unconstitutionally vague. Specifically, they argue that a person of common intelligence will not be able to understand what conduct is prohibited in the context of "knowingly approach." They further contend that the terms "consent," "protest," and "counseling and education" fail to meet constitutional requirements for definiteness. We disagree with all of these contentions.

■ The term "knowingly" is defined in § 18–1–501(6), C.R.S. (1986 Repl.Vol. 8B) of the Criminal Code. A protester acts knowingly if the protester is aware that his or her conduct will cause the protester to be less than eight feet from someone entering or leaving the health care facility without consent. *See People v. Krovarz,* 697 P.2d 378 (Colo.1985).

■ Because the remaining terms are not technical in nature, we must apply the common usage of those words. Section 2–4–101, C.R.S. (1980 Repl.Vol. 1B). To the extent that plaintiffs seek to contrast alternative definitions of the words used, we must apply a common definition that is not vague. *See Frisby v. Schultz, supra; City of Englewood v. Hammes,* 671 P.2d 947 (Colo.1983).

■ Thus, as pertinent here, "protest" refers to written or oral communication advocating a viewpoint on medical treatment and procedures. *See Webster's Third New International Dictionary* 1823. "Consent" refers to oral communication or unmistakable physical conduct manifesting agreement. *See Webster's Third New International Dictionary* 482. "Counseling and education" refers to efforts to present information or guidance to persons entering or leaving a health care facility.

## III

■ Plaintiffs also contend that § 18–9–122(3) constitutes an unconstitutional prior restraint on speech because the consent of a patient is required before a protester may approach within less than eight feet but no time deadline for the patient's consent is provided. Further, they argue that private citizens have unlimited discretion to determine whether consent will or will not be given without having to apply reasonable guidelines. Finally, they complain that there

is no judicial review provided in the statute to determine whether the private citizen's discretion has been exercised in a reasonable fashion. There is no merit in these contentions.

Statutes which have been held unconstitutional as a prior restraint on free speech ordinarily involve a governmental or other entity that has authority to permit or not to permit certain activities in a public forum. *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). We are not aware of any authority that would extend this doctrine to impose limitations upon the right of a private citizen to determine whether to permit others to confront that individual concerning medical care or treatment.

The judgment is affirmed.

STERNBERG, C.J., and ROTHENBERG, J., concur.