120 F.3d 161
 97 Cal. Daily Op. Serv. 5531, 97 Daily Journal
D.A.R. 8990
Katherine SABELKO and Nancy Barto, Plaintiffs-Appellees,
v.
The CITY OF PHOENIX; Paul Johnson; Thelda Williams;
Frances Emma Barwood; Skip Rimsza; Craig
Tribken; John Nelson; Kathy Dubs;
Salomon F. Leija; Calvin C.
Goode, Defendants-Appellants.
 No. 94-15495.
 United States Court of Appeals,
Ninth Circuit.
 July 14, 1997.
As Amended Aug. 1, 1997.
 
 Marvin A. Sondag, Assistant City Attorney, Roderick G. McDougall, City Attorney, Paul W. Badalucco, Assistant City Attorney, Phoenix, AZ, for defendants-appellants.
 Benjamin W. Bull, The American Center for Law and Justice, Phoenix, AZ, for plaintiffs-appellees.
 James Weinstein, Arizona State University, Tempe, AZ, for amicus Arizona Civil Liberties Union.
 Roger K. Evans, Planned Parenthood Federation of America, New York City, and Lawrence J. Rosenfeld, Helen R. Holden and James W. Armstrong, Sacks Tierney, Phoenix, AZ, for amicus curiae Planned Parenthood of Central and Northern Arizona, Inc.
 Joan R. Gallo, George Rios, Assistant City Attorneys, San Jose, CA, amici curiae in support of the defendants-appellants.
 On Remand from the United States Supreme Court. D.C. No. CV-93-02229-SMM.
 Before: SCHROEDER, BEEZER and THOMPSON, Circuit Judges.
 ORDER
 The opinion filed on October 19, 1995 is hereby withdrawn.
 OPINION
 BEEZER, Circuit Judge.
 
 
 1
 We reconsider whether a City of Phoenix ordinance which imposes a "floating buffer zone" restriction upon demonstrators outside of health care facilities violates the First Amendment. We affirm the district court's decision declaring the Phoenix ordinance unconstitutional and enjoining its enforcement.
 
 
 2
 * In 1993, the City of Phoenix, Arizona enacted an ordinance limiting demonstration activity near health care facilities due to concern about harassment outside such facilities. The ordinance makes it unlawful "for any person, in the course of demonstration activity within the access area of a health care facility, to fail to withdraw upon a clearly communicated request to do so to a distance of at least eight (8) feet away from any person who has made the request."[1]
 
 
 3
 Plaintiffs-Appellees Katherine Sabelko and Nancy Barto refer to themselves as "sidewalk counselors" who engage in demonstration activity outside abortion clinics in Phoenix. The plaintiffs filed a 42 U.S.C. § 1983 action in district court seeking declaratory and injunctive relief against the City of Phoenix on the grounds that the ordinance as applied violated the free speech provisions of the First Amendment. In a published decision, the district court declared the ordinance unconstitutional and issued an injunction. See Sabelko v. City of Phoenix, 846 F.Supp. 810 (D. Ariz. 1994). We reversed the district court. Sabelko v. City of Phoenix, 68 F.3d 1169 (9th Cir.1995), vacated, --- U.S. ----, 117 S.Ct. 1077, 137 L.Ed.2d 212 (1997); but see Sabelko, 68 F.3d at 1173 (Beezer, J. dissenting). The Supreme Court vacated our judgment and remanded "for further consideration in light of Schenck v. Pro-Choice Network of Western New York, [--- U.S. ----, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997) ]." Sabelko v. City of Phoenix, --- U.S. ----, 117 S.Ct. 1077, 137 L.Ed.2d 212 (1997).II
 
 
 4
 We first determine whether Phoenix ordinance No. G3705 is content-neutral. We inquire whether "the government has adopted a regulation of speech 'without reference to the content of the regulated speech.' " Madsen v. Women's Health Center, Inc., 512 U.S. 753, 763, 114 S.Ct. 2516, 2523, 129 L.Ed.2d 593 (1994) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989)). In Madsen, the Supreme Court considered an injunction prohibiting demonstrators from "congregating, picketing, patrolling, demonstrating or entering" within 36 feet of a health care clinic. Id. at 759, 114 S.Ct. at 2522. The Court held that "none of the restrictions imposed by the court were directed at the contents of petitioner's message." Id. at 763, 114 S.Ct. at 2523.
 
 
 5
 The Phoenix ordinance regulates all demonstration activity within 100 feet of a clinic. The term "demonstration activity" is defined as including, but is not limited to, "protesting, picketing, distributing literature, attempting to impede access, or engaging in oral protest, education or counseling activities." Like the injunction in Madsen, the Phoenix ordinance does not refer to the content of the speech that it regulates. It is content-neutral.
 
 III
 
 6
 We next determine whether the content-neutral, time, place and manner restrictions in the Phoenix ordinance are "narrowly tailored to serve a significant government interest, and leave[s] open ample alternative channels of communication." Ward, 491 U.S. at 791, 109 S.Ct. at 2753; see Madsen, 512 U.S. at 764, 114 S.Ct. at 2524.
 
 
 7
 * The Supreme Court has held that the government has a substantial interest "in protecting a woman's freedom to seek lawful medical or counseling services in connection with her pregnancy." Madsen, 512 U.S. at 767, 114 S.Ct. at 2526; see Schenck, --- U.S. at ----, 117 S.Ct. at 866. The Court has also indicated that a state has an interest in protecting medical privacy. The Court observed that targeted picketing of a clinic could threaten both the psychological and the physical well-being of a patient held "captive" by medical circumstance. Madsen, 512 U.S. at 768, 114 S.Ct. at 2526 (comparing the government's strong interest in residential privacy, acknowledged in Frisby v. Schultz, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), with medical privacy).
 
 
 8
 The Phoenix ordinance serves such interests. On its face the ordinance seeks to protect the users of the clinic from "harassing or intimidating activity tending to impede ... access to those facilities" and the "adverse physiological and emotional effects" of harassment. These substantial interests in allowing access, eliminating harassment and preventing intimidating activity will support a narrowly tailored ordinance.
 
 B
 
 9
 The Schenck decision guides our review in determining whether the Phoenix ordinance is narrowly tailored. In that case, the Supreme Court considered, inter alia, floating buffer zones similar to the one imposed by the Phoenix ordinance. The injunction at issue in Schenck banned demonstration within fifteen feet of any person seeking to enter or leave a health care clinic. --- U.S. at ----, 117 S.Ct. at 862. The injunction specified, however, that two persons could enter the floating buffer zones to attempt "sidewalk counseling" unless they were asked to cease and desist. Id.
 
 
 10
 The Court struck down the floating buffer zones because "they burden more speech than is necessary to serve the relevant government interests."[2] Id. at ---- - ----, 117 S.Ct. at 866-67. The Court observed that floating buffer zones prevent leafleting and communication at a normal conversational distance, both "classic forms of speech that lie at the heart of the First Amendment." Id. at ---- - ----, 117 S.Ct. at 867. Because this broad prohibition "floated", the court determined that demonstrators would have difficulty determining how to comply with the injunction:
 
 
 11
 Protesters could presumably walk 15 feet behind the individual, or 15 feet in front of the individual while walking backwards. But they are then faced with the problem of watching out for other individuals entering or leaving the clinic.... [A]ttempts to stand 15 feet from someone entering or leaving a clinic and to communicate a message-certainly protected on the face of the injunction-will be hazardous if one wishes to remain in compliance with the injunction.
 
 
 12
 Id. The Court concluded that this lack of certainty about how to comply with the injunction created a substantial risk that more speech would be burdened than the injunction prohibited. Because other means might exist which would protect governmental interests and provide certainty regarding compliance, the Court held that the floating buffer zones burdened more speech than was necessary. Id. at ----, 117 S.Ct. at 868.
 
 
 13
 The Phoenix ordinance suffers the same defects as the injunction in Schenck. It contains a broad prohibition on speech with which it is difficult to comply without risking a violation of the ordinance. An individual within the access area to a clinic can invoke the eight-foot floating buffer zone, effectively preventing handbilling and normal conversation. Demonstrators who attempt communication with an individual must constantly monitor themselves to ensure that they don't encroach upon that individuals's or another individual's floating buffer zone. Further, the demonstrators are faced with the problem of determining which people within the access area have invoked the protection offered by the buffer zone.
 
 
 14
 An ordinance is narrowly tailored "if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." Frisby, 487 U.S. at 485, 108 S.Ct. at 2503. As in Schenck, a Phoenix demonstrator would encounter difficulty in knowing how to remain compliant. This uncertainty concerning compliance establishes a substantial risk that more speech will be eliminated than the ordinance itself prohibits. As such, the Phoenix ordinance lacks the narrow tailoring necessary to survive our scrutiny.[3]
 
 IV
 
 15
 We do not have the power to remedy the Phoenix ordinance. The ordinance contains no severability clause nor can the remainder of the ordinance function independently of the constitutionally infirm floating buffer provision. See Desert Outdoor Advertising v. City of Moreno Valley, 103 F.3d 814, 821 (9th Cir.1996) ("whether partial invalidation is appropriate depends on the intent of the City in passing the ordinance and whether the balance of the ordinance can function independently." Id. (quotation omitted)). Indeed, the floating buffer provision is the only restriction on speech in the ordinance. Moreover, "[c]onsistent with other constitutional norms, legislatures may draw lines which appear arbitrary without the necessity of offering a justification. But courts may not. We must justify the lines we draw." Planned Parenthood v. Casey, 505 U.S. 833, 870, 112 S.Ct. 2791, 2817, 120 L.Ed.2d 674 (1992) (opinion of O'Connor, Kennedy and Souter, JJ.).
 
 V
 
 16
 The Phoenix Ordinance impermissibly encroaches on First Amendment freedoms and its enforcement should be enjoined. We affirm the district court's judgment.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Specifically, the ordinance provides:
 ORDINANCE NO. G3705
 AN ORDINANCE AMENDING CHAPTER 23, ARTICLE 1 OF THE PHOENIX CITY CODE, BY ADDING SECTION 23-10.1, RELATING TO UNIMPEDED ACCESS TO HEALTH CARE FACILITIES; AND DECLARING AN EMERGENCY.
 WHEREAS, unimpeded access to health care services is critically and uniquely important to the public health, safety and welfare; and
 WHEREAS, persons attempting to access health care facilities are subject to harassing or intimidating activity tending to impede their access to those facilities by demonstrators approaching within extremely close proximity; and
 WHEREAS, such activity near health care facilities creates a "captive audience" situation where persons seeking services cannot avoid the area outside the facilities, and their physical and emotional conditions may make them especially vulnerable to the adverse physiological and emotional effects of such harassing or intimidating activities directed at them from extremely close proximity; and
 WHEREAS, such activity in extremely close proximity tends to undermine a person's right to privacy and interference with a person's right to seek legitimate health care treatment and counseling; and
 WHEREAS, this ordinance does not preclude all protesting, picketing, demonstrating, leafleting or educational activities near a health care facility but is a necessary time, place and manner restriction intended to reconcile and protect the First Amendment rights of demonstrators and the rights of persons using health care facilities to be free from direct confrontation, hindrance, harassment, intimidation and harm; and
 WHEREAS, existing law does not adequately protect such access to health care facilities; NOW THEREFORE,
 BE IT ORDAINED by the Council of the City of Phoenix as follows:
 SECTION 1. Chapter 23, Article 1, Phoenix City Code, is amended by adding section 23-10.1 to read:
 Sec. 23-10.1 IMPEDING ACCESS TO HEALTH CARE FACILITIES.
 A. It is unlawful for any person, in the course of demonstration activity within the access area of a health care facility, to fail to withdraw upon a clearly communicated request to do so to a distance of at least eight (8) feet away from any person who has made the request.
 B. For purposes of this section:
 
 
 [1]
 "Access area" means any portion of a public street or other public place or any place open to the public within one hundred (100) feet of an exterior wall or entryway of a health care facility
 
 
 [2]
 "Demonstration activity" includes but is not limited to protesting, picketing, distributing literature, attempting to impede access, or engaging in oral protest, education or counseling activities
 
 
 [3]
 "Health care facility" means any hospital, clinic, office, building or other place used to provide medical, psychological, nursing or other health care services, including family planning counseling and pregnancy-related services
 C. For purposes of this section, distance shall be measured from that part of the closest demonstrator's body that is nearest to the closest part of the requesting person's body. The term "body" includes any natural or artificial extension of a person's body including but not limited to an outstretched arm or a hand-held sign.
 SECTION 2. WHEREAS, the immediate operation of the provisions of this ordinance is necessary for the preservation of the public peace, health and safety, an EMERGENCY is hereby declared to exist, and this ordinance shall be in full force and effect from and after its passage by the Council as required by the City Charter and is hereby exempted from the referendum clause of said Charter.
 PASSED by the Council of the City of Phoenix this 17th day of November, 1993.
 
 
 [2]
 In Madsen, the Supreme Court stated that injunctions, as compared to content-neutral, generally applicable statutes, require a "more stringent application of general First Amendment principles." Madsen, 512 U.S. at 765, 114 S.Ct. at 2524. The standard for injunctions is whether the challenged provisions burden no more speech than necessary to a serve a significant government interest. Id. at 765-67, 114 S.Ct. at 2525; Schenck, --- U.S. at ---- - ----, 117 S.Ct. at 866-67
 
 
 [3]
 Because we find that the Phoenix ordinance is not narrowly tailored, we need not decide whether it "leave[s] open ample alternative channels of communication." Ward, 491 U.S. at 791, 109 S.Ct. at 2753