**Leila Jeanne HILL, Audrey Himmelmann, and Everitt W. Simpson, Jr., Plaintiffs–Appellants,**

v.

**CITY OF LAKEWOOD, Colorado; Gale A. Norton, in her official capacity as Attorney General of the State of Colorado; and the State of Colorado, Roy Romer, Governor, Defendants–Appellees.**

No. 94CA0856.

Colorado Court of Appeals, Div. V.

June 26, 1997.

Rehearing Denied July 24, 1997.

Certiorari Granted Jan. 12, 1998.

The American Center for Law & Justice, Jay Alan Sekulow, James Matthew Henderson, Sr., Washington, D.C.; Roger W. Westlund, Thornton, for Plaintiffs–Appellants.

Gorsuch Kirgis L.L.C., Roger W. Noonan, Maureen Herr Juran, Denver, for Defendant–Appellee City of Lakewood, Colorado.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Carol D. Angel, Assistant Attorney General, Denver, for Defendants–Appellees Gale A. Norton and State of Colorado, Roy Romer, Governor.

Fairfield and Woods, P.C., Howard Holme, Denver; Legal Action for Reproductive Action, Celeste Lacy Davis, Roger K. Evans, New York City; Kevin C. Paul, Denver, for Amicus Curiae Planned Parenthood of the Rocky Mountains and The Center for Reproductive Law & Policy, Inc.

Joseph N. de Raismes, III, City Attorney, Boulder, for Amicus Curiae City of Boulder.

Opinion by Judge RULAND.

In Hill v. City of Lakewood, 911 P.2d 670 (Colo.App.1995) (*Hill I* ), we affirmed the judgment of the district court determining that § 18–9–122, C.R.S. (1996 Cum.Supp.) did not violate the First Amendment. Thereafter, the United States Supreme Court announced *Schenck v. Pro–Choice Network,* —— U.S. ——, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997).

The Supreme Court then granted a petition for certiorari to review *Hill I. Hill v. Colorado,* —— U.S. ——, 117 S.Ct. 1077, 137 L.Ed.2d 213 (1997). In disposition of that certiorari petition, the court has remanded the case to us for reconsideration in light of *Schenck.*

We requested supplemental briefs from the parties relative to the impact of *Schenck* on § 18–9–122. Having reviewed and considered those submissions, we again affirm the district court's judgment.

Section 18–9–122 provides:

(1) The general assembly recognizes that access to health care facilities for the purpose of obtaining medical counseling and treatment is imperative for the citizens of this state; that the exercise of a person's right to protest or counsel against certain medical procedures must be balanced against another person's right to obtain medical counseling and treatment in an unobstructed manner; and that preventing the willful obstruction of a person's access to medical counseling and treatment at a health care facility is a matter of statewide concern. The general assembly therefore declares that it is appropriate to enact legislation that prohibits a person from knowingly obstructing another person's entry to or exit from a health care facility.

. . . .

(3) No person shall *knowingly* approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way or sidewalk area within a radius of one hundred feet from any entrance door to a health care facility. Any person who violates this subsection (3) commits a class 3 misdemeanor.

(emphasis supplied)

◼ As noted in *Hill I,* the statute was adopted by the General Assembly out of concern for public safety issues presented by the conduct of some protestors at various medical clinics that is directed both at patients and staff. These concerns include access for persons with various disabilities who lack the physical capability to move through crowds of protestors.

In *Schenck,* the Supreme Court addressed a First Amendment challenge to an injunction issued by the United States District Court in response to the conduct of protestors at abortion clinics in the Western District of New York. As pertinent here, the injunction banned "demonstrating within fifteen feet from either side or edge of, or in front of, doorways or doorway entrances, parking lot entrances, driveways and driveway entrances" to a clinic. This part of the injunction is referred to as the "fixed buffer zone."

In addition, the injunction banned demonstrations "within fifteen feet of any person or vehicle seeking access to or leaving" a clinic—the "floating buffer zone."

The court upheld the fixed buffer zones around the doorways, driveways, and driveway entrances. The court stated:

> These buffer zones are necessary to ensure that people in vehicles trying to enter or exit the clinic property or clinic parking lots can do so.... [T]he record shows that protestors purposefully or effectively blocked or hindered people from entering and exiting the clinic doorways, from driving up to and away from clinic entrances, and from driving in and out of clinic parking lots.

*Schenck v. Pro–Choice Network, supra,* —— U.S. at ——, 117 S.Ct. at 868, 137 L.Ed.2d at 22–23.

With reference to the floating buffer zone, the court stated:

> We strike down the floating buffer zones around people entering and leaving the clinics because they burden more speech than is necessary to serve the relevant governmental interests. The floating buffer zones prevent defendants [the protestors] ... from communicating a message from a normal conversational distance or handing leaflets to people entering or leaving the clinics who are walking on the public sidewalks.... Leafletting and commenting on matters of public concern are classic forms of speech that lie at the heart of the First Amendment and speech in public areas is at its most protected on public sidewalks....

*Schenck v. Pro–Choice Network of Western New York, supra,* —— U.S. at ——, 117 S.Ct. at 868, 137 L.Ed.2d at 22–23.

The court also overturned the floating buffer zones around vehicles. The court held that a more limited injunction that keeps protestors away from driveways and parking lot entrances is sufficient to ensure that drivers are not confused about how to enter the clinic and are able to gain access to its driveways and the parking lots safely and easily.

■ Plaintiffs now contend that, to the extent the statute creates a floating buffer zone of eight feet, *Schenck* mandates that we declare the statute unconstitutional. They rely upon language in *Schenck* to the effect that there is no right to be left alone on a public sidewalk for the purposes of leafletting and that persons using the sidewalk must tolerate insulting and even outrageous speech. They further rely upon the determination in *Schenck* that 15 feet is to great a distance for normal conversation. Plaintiffs finally rely upon the observation in *Schenck* that it is difficult to determine when one is less than a specified distance from a patient or staff member, thus making compliance with the statute difficult. We are not persuaded by these arguments.

The court in *Schenck* expressly declined to hold that a valid governmental interest in ensuring ingress and egress to a medical clinic may never be sufficient to justify a zone of separation between individuals entering and leaving the premises and protesters. Further, in *Madsen v. Women's Health Center, Inc.,* 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994), the court held that the applicable analysis to assess the statute before us is that adopted in *Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Specifically, the *Madsen* court stated:

> If this were a content-neutral, generally applicable statute, instead of an injunctive order, its constitutionality would be assessed under the standard set forth in *Ward v. Rock Against Racism, supra,* 491 U.S., at 791, 109 S.Ct., at 2753–2754 and similar cases. Given that the forum around the clinic is a traditional public forum ... we would determine whether the time, place, and manner regulations were 'narrowly tailored to serve a significant governmental interest.'

*Madsen v. Women's Health Center, Inc., supra* at 764, 114 S.Ct. at 2524.

As noted in *Hill I,* and confirmed by the analysis in *Schenck,* § 18–9–122 is a content-neutral, generally applicable statute supported by a valid governmental interest. The issue then becomes whether the restrictions in the form of an eight-foot floating buffer zone are narrowly tailored to serve that governmental interest. In this context, it must appear under *Ward* that ample alternative methods are available for communication of the protesters' information. Applying

the *Ward* rationale here, we conclude that the statute meets constitutional muster.

Initially, we reject plaintiffs' claim that the statute is unconstitutional because of the determination in *Schenck* that a 15-foot floating buffer precluded protesters from expressing their views from a normal conversational distance. In our view, a lesser distance of eight feet is sufficient to protect that type of speech on a public sidewalk—even for the insulting and outrageous language protected by the First Amendment. Further, under the statute a protester is permitted to approach to a distance of less than eight feet with consent of the patient or staff member.

Finally, with reference to the fact that leafletting may not take place within 100 feet of the entrance to the medical clinic unless consent is given, we view the significant governmental interest here as sufficient to warrant the requirements of the statute. Specifically, as noted in *Hill I*, a committee of the General Assembly considered the fact that out of 60,000 patients who obtained services at one of the clinics, only 7 percent were there to consider abortions. Nevertheless, all patients were subjected to the same treatment by the protesters.

The committee also heard testimony that the efforts of protesters create a particularly difficult task for persons with disabilities who lack the physical ability to move through crowds.

As a result, in our view the governmental interest of ensuring easy access to those with physical disabilities by creating an eight-foot buffer zone within a 100-foot area is amply sufficient to justify the statute. Stated otherwise, it seems to us that it is not unreasonable to require protesters to give way to a distance of eight feet so that one with physical disabilities has unimpeded access to a medical clinic especially when the protester can still vocally express his or her views on the issue at hand in a normal conversational voice.

Finally, ample alternate channels for communication other than leafletting are available within 100 feet of the entrance to the health care facility in the form of speech for those without hearing disabilities, placards for those with hearing deficiencies, and other visual items for the sighted patients and staff.

With reference to plaintiffs' complaint that it is difficult to ascertain and maintain an eight-foot distance from each non-consenting patient and staff member, we note that the statute precludes only improper contact made "knowingly." Hence, a successful prosecution could not be based upon an inadvertent violation.

Accordingly, we conclude that *Schenck* does not compel the conclusion that § 18–22–109 violates the First Amendment.

The judgment is affirmed.

STERNBERG, C.J., and ROTHENBERG, J., concur.